## JAMES M. BISHOP
### *v.*
### ALICE A. THOMPSON *et al.*

*Opinion filed April 16, 1902.*

1. LACHES—*there can be no laches where there is no knowledge.* Delay will not bar relief in equity against fraud, where the injured party has been ignorant of the fraud practiced upon him until shortly before commencing his proceeding.

2. SAME—*when laches in discovering fraud will not be imputed.* Where the seller takes a purchase money mortgage, which he agrees to withhold from record until the purchaser has secured a building loan, with the understanding that the purchase mortgage should be the second lien, if the seller, upon discovering that the purchaser has placed a second lien upon the property appearing of record to be valid, inquires of the mortgagor and mortgagee if the same is *bona fide* and is assured by them that it is, he is not bound to make further inquiry to avoid the imputation of *laches* in discovering the mortgage was fraudulent.

3. EQUITY—*when party is entitled to have conveyances set aside.* If the holder of a purchase money mortgage, which was to be recorded as a second lien after the purchaser had secured a building loan, learns that the purchaser has placed a second mortgage upon the property which he is assured by the parties is valid, he may purchase the mortgage for his protection, and if he discovers that such mortgage was fraudulent and without consideration, may, after the mortgaged property has been swept away by foreclosure of the building loan lien, (the mortgagor being insolvent,) come into equity to set aside his conveyance of certain property made in payment for the second mortgage, and to cancel a deed to the same from his grantee to a third party without consideration; nor is his right barred because he destroyed the worthless mortgage and note after purchasing them and before discovering the fraud.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

FREDERIC R. DEYOUNG, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The superior court of Cook county sustained appellees' demurrer to the amended bill of appellant, in which he prayed the court to set aside a deed made by him to the appellee Louis A. McDonald, and a deed from said McDonald to the appellee Alice A. Thompson. The bill was then dismissed by the court at the cost of appellant.

The criticisms of counsel for appellees upon the form and manner of statement employed in the bill seem to be deserved. The rules of equity pleading require a clear and orderly statement of the facts relied up as a ground for the relief sought, so that the facts alleged may be readily understood and put in issue. The bill in this case, with its two amendments, does not conform to such rules, but presents a rather confused statement of facts and conclusions. But we find in it the following statements of fact admitted by the demurrer to be true: The complainant, James M. Bishop, being the owner of certain real estate in Cook county, sold and conveyed the same to the defendant Alfred L. Ward for the consideration of $3600, by deed dated August 3, 1891, and recorded October 2, 1891. Complainant agreed to take a purchase money mortgage to secure $3400 of the price, and to withhold his mortgage from record until Ward could borrow money to improve the premises by making a building loan secured thereon. The building loan was to be the first encumbrance and complainant's mortgage the second. Ward obtained a building loan secured on the property to the amount of $6600, and notified complainant. Ward also executed a mortgage of the premises to the defendant Louis A. McDonald for $3000, dated in August, 1891, and recorded October 2, 1891. This mortgage was made in violation of the agreement between

Ward and the complainant and in fraud of complainant's rights, and was without consideration. This fraudulent mortgage appeared on the record to be a second lien on the premises. Complainant, on receiving notice that the building loan had been effected, without examining the records filed his mortgage for record October 8, 1891, which was the third lien. In April, 1892, complainant first learned of the intermediate mortgage to McDonald, and the defendants Ward and McDonald then represented to him that said mortgage was made in good faith and was valid, and represented an actual indebtedness of Ward to McDonald. The complainant, relying on such representations, purchased the mortgage from McDonald and deeded to him in payment therefor certain real estate in said county of the value of $3000. McDonald thereupon, by a deed dated May 28, 1892, conveyed the property received from complainant, without any consideration, to the defendant Alice A. Thompson, a daughter of Ward. The building loan mortgage was foreclosed and swept away the property conveyed to Ward, and the subsequent mortgages became utterly worthless and the mortgage received from McDonald was destroyed. Ward, the maker of the notes and mortgage to McDonald, was wholly insolvent when they were made and has so remained to the present time. The title to the property conveyed to McDonald, and by him conveyed without consideration to Alice A. Thompson, remains in her. The complainant, by his bill, offered to re-pay any taxes or expenditures on the property and to execute an assignment of the notes and mortgage which were destroyed, and give such indemnity against them as the court might decree.

The principal objection to the bill urged by counsel is, that the complainant was guilty of *laches* which should bar relief in equity. A court of equity will not aid a party guilty of unreasonable delay in asserting his rights. After one who has been defrauded has obtained knowl-

edge of the fraud or learned facts or circumstances from which knowledge would be imputed to him, he must act promptly in asking the aid of the court. There is no *laches*, however, where there is no knowledge, and delay will not bar relief where the injured party has been ignorant of the fraud. The duty to commence proceedings can arise only upon the discovery of the fraud. (Pomeroy's Eq. Jur. sec. 917.) In this case, the complainant inquired of the maker and holder of the encumbrance, and they both asserted it was valid; that it was given in good faith, and that it represented an actual indebtedness. From the public records the mortgage appeared to be valid, and presumably no one except the parties to the transaction would know to the contrary. Complainant knew of the fraud of Ward in making the mortgage to McDonald, but he had no reason to suppose that McDonald was engaged with Ward in defrauding him, or that Ward had been guilty of any further wrong than interpolating the mortgage on the records so as to give McDonald a preference. There was no other apparent source of information than the parties to the mortgage, and, of course, complainant was not required to make general inquiry among people who presumably knew nothing about the facts. No fact or circumstance is stated from which complainant would be charged with notice of the fraud, or which ought to have given rise to suspicion or belief that he had been defrauded. He first learned the facts on July 19, 1901, when he was applied to in behalf of Ward to make a deed for the correction of the deed to McDonald, and he filed the bill in this case July 24, 1901. He was not guilty of *laches*.

Counsel further say that whether or not there was a consideration for the mortgage to McDonald was of no consequence to complainant, and that he was in no way affected by it. His property to the amount of $3000 was obtained by means of the fraudulent and worthless mortgage and the fraudulent representations of the defend-

ants Ward and McDonald. It is true that Ward and McDonald would have been estopped by their false representations to complainant, and if the mortgaged premises had been of sufficient value to pay all the mortgages, complainant would have been reimbursed the amount of which he was defrauded, and, in the end, would have suffered no damage. The mortgaged property, however, was not worth more than the building loan when it matured and the McDonald mortgage had no value as an encumbrance, so that complainant's loss by the fraud was the value of the property he conveyed. The maker of the notes was insolvent and worthless when they were made, and has been so ever since.

It is also urged that the complainant can have no relief because he cannot put McDonald *in statu quo,* the notes and mortgages having been destroyed. They were absolutely worthless in McDonald's hands, and their restoration would not benefit him in any way. He could not maintain any action on them against anybody, and suffered no injury by their not being restored. Complainant offered to execute an assignment or give any indemnity against them that the court might require, and he could not be barred of his remedy because he had, in ignorance of the fraud, destroyed the worthless papers. It appears from the averments of the bill that McDonald was merely used to accomplish the fraud, and that he conveyed the premises immediately, without consideration, to the daughter of Ward. As she parted with nothing there is nothing to be restored to her, and complainant offered to recompense her for all taxes paid or expenditures on the property.

We think sufficient facts were stated in the bill to call for the relief prayed for and that the demurrer should have been overruled. The decree of the superior court is reversed and the cause is remanded to that court, with directions to overrule the demurrer.

*Reversed and remanded.*